MILLER v. THE MUTUAL BENEFIT LIFE INSURANCE CO.

**Verdict: WHEN NOT SUSTAINED BY EVIDENCE.** A verdict which is not supported by the evidence and is manifestly the result of a feeling of sympathy for one of the parties, will not be sustained.

*Appeal from Dubuque Circuit Court.*

THURSDAY, SEPTEMBER 24.

THIS is an action upon a policy of insurance upon the life of James A. Miller, plaintiff's husband. There was a jury trial, and a verdict and judgment for plaintiff. Defendant appeals. This case has been before us on two former appeals. See 31 Iowa, 216, and 34 Iowa, 222.

*Adams & Robinson,* and *Griffith & Knight,* for appellant.

*De Witt C. Cram* and *C. J. Rogers,* for appellee.

DAY, J.—The policy sued on contains a provision that in case the said James A. Miller shall die by reason of intemperance from the use of intoxicating liquors, the policy shall be void and of no effect.

Amongst other defenses to the action, the defendant pleaded that the said James A. Miller died by reason of intemperance from the use of intoxicating liquors. In addition to the general verdict for plaintiff, the jury found specially, that the said James A. Miller did not die by reason of the intemperate use of intoxicating liquors, but that his death was caused by congestion of the lungs and brain, and that this congestion was not caused by the use of intoxicating drinks. Upon the preceding trial the jury returned the same special findings. When the case was last before us we held that the verdict was palpably and grossly in conflict with the evidence, and could only have been rendered under the influence of passion or prejudice. See 34 Iowa, 223.

A careful examination of the testimony now before us enables us to discover in it no material difference from that which was produced on the last trial. Some twelve witnesses testify as to the previous intemperate habits of James A. Miller. Some of them knew him for ten years previous to his death, and had " seen him frequently in all stages of intoxication, from noisy hilarity to helplessness," and they testify that " he was a hard drinker;" that " he took very long and hard sprees, and sometimes kept drunk for several days at a time." One witness, who had known Miller from 1854 until the last of 1862, states: " He drank more or less all the time. At times he would drink very hard, taking sprees of from one to four weeks duration, and he would take several such sprees in the course of the year during the time that I knew him. I have seen him helpless from intoxication a great many times." It is established beyond any question, and indeed without any conflict in the evidence, that for a period of about ten years the deceased was addicted to debauches of long duration and excessive in their character. The immediate circumstances of his death are as follows: He spent two or three days and nights drinking at a saloon. The night preceding the last day that he

spent there, he slept in a room two doors from the saloon to which he was helped by the two saloon keepers, each having hold of an arm.  Part of the next day, which was Thursday, he was tolerably sober, but was again intoxicated in the evening.  He ate a little, which he threw up.  He was assisted home by the saloon keeper Thursday night and a physician was called.  The physician found him very restless, nervous, with constant hiccoughing and vomiting, and with more or less derangement of mind, the hiccoughing and vomiting resulting from irritation of the stomach, and the irritation of the stomach from intemperate habits.  The next day, Friday, the physician visited him morning and evening, and found his condition much the same as on the preceding evening, except that the symptoms had increased in intensity.  On the next day the physician visited him three times and found that he had slept none since the first visit, that his mind was more unsettled, and that he had the usual symptoms of delirium tremens, nervousness, sleeplessness, restlessness and delirium.  On Saturday evening about eight o'clock he went down town and was gone twenty minutes.  He was visited by the physician on Sunday, morning, noon and night, and was found very feeble and sinking.  That night, a little after twelve o'clock, he died.  The attending physician testifies that his death was caused by intemperate habits, or to speak more explicitly his sickness was caused by intemperate habits, and the immediate cause of his death was congestion of the lungs and brain.  Upon the former appeal it is said:  " That he died from intemperance in the use of intoxicating liquors, there can be no honest, reasonable doubt.  There is nothing within the whole record that can be dignified into the importance of creating a conflict of evidence on this point."  The evidence of Mrs. Miller is a little more full upon the last than upon the preceding trial.  But the only additional facts which are testified to are in the testimony of Mrs. Miller that her husband exhibited no proper delirium, and that he went down town with his slippers and clothes on, instead of in his night clothes, as the physician understood her to say, and in the testimony of Mrs. Miller and the brother of the deceased, that for some

time before his death he had been troubled with a cough. There is nothing to contradict the circumstances as above set forth, as attendant upon his last sickness and death. The court instructed the jury that if they found from the evidence that Miller died from congestion of the lungs and brain, which disease was superinduced by, and was the immediate result and direct consequence of his intemperate use of intoxicating liquors, they should find for the defendant. How, in view of the evidence, and the law given by the court, an impartial and unprejudiced jury, indifferent as between the parties, and anxious to ascertain the truth and effectuate the right, could return a general verdict for plaintiff, and find specially that the, congestion of the lungs and brain which caused Miller's death was not caused by the intemperate use of intoxicating liquors, passes our comprehension.

Sympathy, when exhibited upon proper occasions, and under proper circumstances, is commendable and lovely. But every virtue borders so nearly upon vice, that it is difficult to determine when the act ceases to be the one, and becomes the other. Too much liberality is prodigality, and too much firmness is obstinacy. So too much sympathy, or sympathy not controlled and checked by proper notions of right and a due regard for justice, may lead to the overturning of all legal principles, and be utterly subversive of an intelligent and honest administration of the law. The plaintiff would doubtless be benefitted in a much greater degree than the defendant would be injured, by a recovery. And it is a matter of regret that the circumstances of her husband's death are such as not to entitle her to recover. But it would be a matter of much greater regret if courts, for her benefit, should allow well established principles of law to be overturned or set at naught.

We interfere with the verdict of a jury always reluctantly, and never unless it is clearly unsupported by the evidence, or has been otherwise improperly reached.

We deprecate the necessity which impels us a second time to set aside a verdict upon substantially the same testimony. But it were much more to be deprecated if the pertinacity of a jury could override law and right, and give triumph to

injustice and wrong. We need not consider the other errors assigned. The charge of the court is quite full and fair, and seems to us to be, at least in the main, in accord with the principles settled in this case upon the first appeal.

The court should have granted a new trial upon the ground that the verdict is not sustained by the evidence.

REVERSED.